**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


ISAAC MONTANO,

        Petitioner,

vs.                        No. CIV-12-442 JP/ACT

TIMOTHY HATCH, Warden,
and GARY K. KING, New Mexico
Attorney General,

        Respondents.


**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION** [1]

    1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, filed April 26, 2012 [Doc. 1] and Memorandum in Support [Doc. 2]. This matter was

referred to the undersigned United States Magistrate Judge by the Honorable James A. Parker,

United States District Judge, on April 27, 2012, to submit proposed findings of fact and

recommendation for the disposition of this case pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3)

[Doc. 4].

    2. Petitioner Isaac Montano ("Montano") is currently confined in North Eastern New

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and
recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to
such findings and recommendations. A party must file any objections with the Clerk of the U.S.
District Court within the fourteen-day period allowed if that party wants to have appellate review
of the findings and recommendations. If no objections are filed, no appellate review will be
allowed.

Mexico Detention Facility in Clayton, New Mexico. [Doc. 1.] Montano, proceeding *pro se*, challenges the terms of the Judgment, Sentence, Commitment, and Order Partially Suspending Sentence [Doc. 2 at Ex. B] which was entered pursuant to a plea of guilty to the offenses of second-degree murder and armed robbery by the Ninth Judicial District Court in <u>State of New Mexico v. Isaac Montano, a.k.a. Isaac Montano Jr.</u>, No. D-0911-CR-200900089 (Roosevelt County).  [*Id*. and Doc. 12-1 at Ex. B.]

3.   Montano raises four grounds for relief.  Montano has exhausted his state remedies as to the claims in his first three grounds.  However, his fourth ground for relief raises a new claim for ineffective assistance of counsel that had not been previously raised.  Therefore, Montano's Petition presents a "mixed" Petition which contains both exhausted and unexhausted claims.

4.   Montano's four grounds for relief are as follows:

<u>Ground One</u>.  Montano claims that his counsel was ineffective for three reasons: (1) he misrepresented the consequences of the plea agreement; (2) he failed to object during "colloquy when the sentence did not reflect the conditions to the plea agreement;" and (3) he failed to timely file a motion after "conviction" in an attempt to reconcile the sentence with the plea agreement.  [Doc. 1 at p. 5 of 17.]

<u>Ground Two</u>.   Montano claims prosecutorial misconduct which he states was "formerly raised in Violation of Due Process and Breach of Plea Agreement/Contract."  He argues that the State had agreed to a 20 year cap on his sentence yet proceeded to tell the court that a 20 year prison term with 4 years probation was an option.   Montano argues that this exceeds the cap in the Plea Agreement.  Montano states that he is "unaware if the State misrepresented the consequences of the plea to counsel, wasn't thoroughly explained by counsel, or both counsel and State were in collusion." [Doc. 1 at pp.6 and 7 of 17.]

2

Ground Three.   Montano claims that the state court abused its discretion when it sentenced him to a total of 24 years which he claims was contrary to the plea agreement. Montano states that he understood that the length of his probation could not exceed the length of the maximum imprisonment which was 20 years, including 5 years of which was to be served on probation resulting in only fifteen years imprisonment. [Doc. 1 at p. 8 of 17.]

Ground Four.   Montano claims that he was prejudiced by his attorney's performance. He asserts that he paid his attorney to take his case to trial but that counsel's failure to engage in any type of pretrial practice left Montano with no choice but to enter a guilty plea. [Doc. 1 at p. 10 of 17.]

**Procedural Background**

5.   On June 30, 2009, a grand jury indictment was returned charging Montano with the following: (1) Count I, Murder in the first degree; (2) Count 2, Armed Robbery with a deadly weapon; (3) Count 3, Tampering with evidence; (4) and Count 4, Possession of a firearm/destructive device by a felon. [Doc. 12-3 at p. 15 of 53.]

6.   On May 5, 2010, Montano agreed to the following Plea and Disposition Agreement: guilty to the crime of Murder, a second degree felony resulting in the death of a human being and guilty of Armed Robbery, a second degree felony.  [Doc. 12-1 at Ex. B.] The agreement, in pertinent part, specified that both counts were to run consecutively, that the Defendant would serve a minimum term of incarceration of fifteen years, but could receive up to a maximum of twenty years. [Id., Ex. B at p. 2.]  The term "twenty years" was evidenced by a handwritten modification on the typed term "twenty-four years" in the plea agreement.  The term "twenty-four years" was modified by an interlineation which struck out the "four" each time the term "twenty-four" appeared.  Each time the "four" was struck out, the prosecutor and Montano,

3

initialed the strike-out. [*Id.*]  The Plea and Disposition Agreement further stipulated that Montano had a "range of sentences from a minimum of fifteen years incarceration to be followed by nine years suspended in favor five [sic] on probation to a maximum of twenty years incarceration." [*Id.* pp. 1-2.]

      7.   Montano affirmed in the plea and disposition agreement as follows:

> I have discussed the case and my constitutional rights with my lawyer.  I understand that by pleading guilty I will be giving up my right to a trial by jury, to confront, cross-examine and compel the attendance of witnesses, and my privilege against self-incrimination.

[Doc. 12-1,  Ex. at p. 4.]

      8.   On September 1, 2010, the state court entered a Judgment, Order and Commitment and Order Partially Suspending Sentence to the Department of Corrections pursuant to a Guilty Plea Agreement to the following crimes: (1) Count I, Murder, a second degree felony resulting in the death of a human being and (2) Count II, Armed Robbery, a second degree felony.  [Doc. 12-1 at Ex. A.]  The Court ordered Montano to be incarcerated for fifteen (15) years on Count I and for nine (9) years on Count II for a total incarceration time of 24 years. The Judge ordered that the final four years of the sentence suspended, thus making the total years of incarceration twenty (20) years.  He also ordered Montano would thereafter be placed on supervised probation for four years. [*Id.*]

      9.   On January 13, 2011, Montano, by and through his attorney, filed a Motion to Amend the Judgement and Sentence. [Doc. 12-1 at Ex. C.] Montano's counsel argued that the Judgment did not reflect the Plea Agreement signed by the State and defendant.  He argued that the Plea Agreement should be read to mean that both of Montano's Counts would run consecutively and he would serve a minimum term of incarceration of fifteen (15) years but may receive up to a

maximum of twenty (20) years. [*Id.*] "Defendant [understood] that he has a range of sentences from a minimum of fifteen (15) years incarceration to be followed by nine (9) years suspended in favor of five (5) on probation to a maximum of twenty (20) incarceration." [*Id.* at p. 1.]

10. The State filed its Response to Defendant's Motion to Amend Judgment and Sentence on January 18, 2011. [Doc. 12-1, Ex. D.] The State argued that Montano "received the sentence bargained for and nothing more." [*Id.* ] Specifically, "the first full paragraph of page 2 of the Judgement and Sentence [Doc. 12-1 at Ex. A] . . . suspends the final four years in favor of probation, thereby making the Defendant's resulting incarceration time, [sic] the twenty years as bargained for." [Doc. 12-1 at Ex. D.] The State also points out that in the Plea Agreement "Defendant understood his range of sentences and this range included time suspended in favor of probation, but that the maximum incarceration time would not exceed twenty years." [*Id.*]

11. On April 25, 2011 a hearing was held on the motion to amend judgment. [Doc. 12-3 at Ex. M.]

12. On May 3, 2011, Judge Hartley issued his Decision Letter on Montano's Motion to Amend Judgment and Sentence. [Doc. 12-1 at Ex. E] Judge Harley quotes from the Plea Agreement as follows:

> (2) Defendant will serve a minimum term of incarceration of fifteen years, but may receive up to a maximum of twenty-four years, (3) Defendant understands that he has a range of sentences from a minimum of fifteen years incarceration to be followed by nine years suspended in favor five on probation to a maximum of twenty-four [as discussed above, the term "four" is marked by an interlineation approved by the State and Montano's counsel].

[*Id.*, Ex. E at p. 1.] Montano contests the language in the Judgement and Sentence as not being in conformity with the Plea Agreement but Judge Hartley stated that Montano attempts to make a distinction without a difference, specifically as follows.

5

(1) The Defendant is to have 20 years of incarceration, as found in the Plea
Agreement, which is the major point of the review.  (2) The Judgment and
Sentence comes to the same conclusion as the Plea Agreement, and does not
modify the period of incarceration, but explains paragraph (3) of the Plea
Agreement [which addresses restitution].  The Court is of the opinion that there is
no difference between the Plea Agreement and the Judgment and Sentence.

[*Id.*, Ex. E at p. 2.]

13.   Judge Hartley concluded by noting that "notwithstanding the areas of discussion set forth above" he is prohibited by Rule 5-801, NMSA from modification of the sentence because any request for modification must take place within 90 days after the date the judgment was entered.  Here the Judgment and Sentence was entered on September 1, 2010, more than ninety days after the Motion to Amend the Judgement and Sentence was filed.

14.   Montano did not file a direct appeal of Judge Hartley's Judgment and Sentence and Decision Letter on the Motion to Amend. [Doc. 12-3 at p. 5 of 53.]

15.   On June 22, 2011, Montano filed a Petition for Writ of Habeas Corpus and a Memorandum in Support of Petition for Writ of Habeas Corpus with the state district court. [Doc. 12-1 at Ex. F and Ex. G, respectively.] Montano listed his claims as follows: (1) violation of due process based on sentence of incarceration of 20 years instead of 15 years, as allegedly agreed to in the Plea Agreement; (2) ineffective assistance of counsel based on counsel's incorrect advice as to the way the sentence would imposed, counsel's failure to object, and counsel's failure to timely appeal the sentence to the district court; and (3) breach of the Plea Agreement/Contract by imposing a sentence based on an ambiguous Plea Agreement. [Doc. 12-1 at Ex. F.]

16.   In September 2011, the State Public Defender's Habeas Conflict Unit entered it appearance for Petitioner. [Doc. 12-1, Ex. H.]

17.   On January 12, 2012, State District Judge Hartley issued his Decision and Summary

Dismissal on Montano's Petition for Writ of Habeas Corpus. [Doc. 12-1, Ex. I.]  Judge Hartley

found that the sentence imposed was permitted under the plea agreement and stated that he stood

by his earlier decision reflected in his Decision Letter dated May 3, 2011 [Doc. 12-1, Ex. E].

[Doc. 12-1, Ex. I at p. 1.] He held that the plea agreement "was valid and agreed to by all

parties." [*Id.* at p. 2.]

18.   Judge Hartley addressed Montano's claim of ineffective assistance of counsel. [Doc.

12-1, Ex. I at p. 2.] He found that Montano's counsel was both effective and competent.   Judge

Hartley observed that Montano had been facing a life sentence plus 13 ½ years plus

enhancements on the original charges and was ultimately sentenced to 20 years incarceration and

4 years of probation on reduced charges.   The judge noted that it was evident that Montano was

making the motion because he was disappointed with the sentence imposed and had hoped to get

even greater leniency.  "Dissatisfaction with the results obtained through the efforts of his

attorney does not provide a basis for post conviction relief." [Doc. 12-1, Ex. I at p. 2.]  He found

that Montano's allegation of ineffective assistance of counsel was not supported and further that

there was no prejudice to Montano is this regard. [*Id.*]

19.   Judge Hartley also addressed Montano's claim of "breach of contract" by

interpreting this claim to be a request that the court change a portion of a "plea agreement that

was valid and agreed to by all parties." [Doc. 12-1, Ex. I at pp. 51-54.]   The court held that it is

well settled that a plea agreement,

> absent constitutional or statutory invalidity, is binding upon both parties, and the
> defendant may not accept parts of the agreement and reject others.  This rule of
> law recognizes that both parties to a plea bargain make various concessions and
> gain certain advantage during plea negotiations.  Consequently, a criminal
> defendant, having availed himself of the advantages of a plea agreement, cannot

welch on his part of the bargain. An essential corollary to the rule is that the district court cannot amend or modify a sentence imposed pursuant to a valid plea agreement in such a way that would allow one party to renege on its part of the agreement. (Omitting quotations and citations.)

[*Id.* at p. 52]

20.   Judge Hartley found that Montano was not entitled to relief as a matter of law and dismissed Montano's Writ of Habeas Corpus.

21.   On February 13, 2012 Montano filed his Petition for Writ of Certiorari with the New Mexico Supreme Court. [Doc. 12-2, Ex. J.]   He raised the following three grounds in his Petition to the New Mexico Supreme Court:

Ground 1.   Violation of due process because (a) the conviction was obtained by a guilty plea unlawfully induced; (b) he was sentenced outside the parameter of the agreement; and (c) the judgment and sentence did not reflect the plea agreement. [Doc. 12-2, Ex. J at pp. 1, 3.]

Ground 2.   Ineffective assistance of counsel because (a) counsel gave incorrect advice as to how the sentence would be imposed or Montano would not have entered the plea; (b) counsel did not object when the sentence was imposed; (c) counsel failed to file a motion or appeal as requested by Montano; and (d) counsel's performance prejudiced the Montano.  [Doc. 12-2, Ex. J at pp. 1, 3.]

Ground 3.   Breach of the plea agreement/contract because (a) the court is in violation of federal and state constitutional provisions concerning impairing the obligation of contracts imposing a sentence outside the parameters of the plea; and (b) the plea was ambiguous and should be construed in favor of Montano.  [Doc. 12-2, Ex. J at pp. 1, 3.]

22.   Montano also argues that with regard to each of the claims in his Petition he was denied an evidentiary hearing and asks for a remand for a full hearing and to correct the

sentence. [Doc. 12-2, Ex. J at pp. 1, 3.]

23.   On March 7, 2012, the State filed its Response and Objection to Petition for Writ of Certiorari. [Doc. 12-1, Ex. K.]

24.   On March 26, 2012 the New Mexico Supreme Court ordered that the Petition for Writ of Certiorari [Doc. 12-2, Ex. J] be denied. [Doc. 12-2, Ex. L.]

## Analysis

## Exhaustion of Remedies

25.   Before reaching the merits of Montano's habeas claims, this Court must first determine if Montano exhausted his claims in state court.  A federal court may consider a petition for writ of habeas corpus only after the petitioner first presents his claims to a state court and exhausts his state remedies, unless "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).  "The exhaustion requirement is satisfied if the issues raised in the federal petition have been properly presented to the highest state court, either by direct review of the conviction, or in a post-conviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  Finally, "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

26.   As noted above, Montano has exhausted his state court remedies as to his claims in Ground One, Two and Three.  However, in Ground Four, Montano raises a new claim of ineffective assistance of counsel which he had never previously raised.  In Ground Four, Montano asserts that he paid his attorney to take his case to trial, but that his counsel's failure to engage in any sort of pretrial practice left Montano with no choice but to enter a guilty plea.

[Doc. 1 at p. 10 of 17.]   Therefore, Montano's Petition presents a "mixed" Petition which contains both exhausted and unexhausted claims.

27.   Montano filed a "Limited Reply in Response to the Respondents 'Answer' to Mr. Montano's Habeas Corpus" [Doc. 14] wherein he addressed Respondents' arguments regarding his ineffective assistance of counsel claim in Ground Four.  In his Limited Reply, Montano stated that he submitted the ineffective assistance of counsel claim in Ground Four "to satisfy the prejudice prong pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984) [and] that he was not presenting any subparts in Ground Four as new issues." [*Id.* at p. 3.]  He states that he "by no means brought forth unexhausted claims in his Petition." [*Id.*]  He further states that he "understands that a few new issues appear to have been raised in Ground Four" but requests "that all parties involved not to consider them as subparts to the greater issue that Petitioner was prejudiced by Counsel's performance and 'would have gone to trial instead of pleading guilty or no contest had Counsel not acted unreasonably.' *Patterson v. Le Master*, *supra*, 2001-NMSC-013 at ¶ 18." [Doc. 14 at pp. 3-4.]  He closes by clearly requesting that the Court "find Petitioner's 2254 Petition does not have unexhausted claims." [*Id.* at p. 5.]

28.   The Court has several options available to it when presented with a petition which contains both exhausted and unexhausted claims.  The Court can:

> (1) dismiss the mixed petition in his entirety, *Rhine,* 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the Petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § (b)(2).

*Fairchild v. Workman,* 579 F.3d 1134, 1156 (10th Cir. 2009).

29.   The Supreme Court addressed the issue of unexhausted claims raised in a federal petition for writ of habeas corpus in *Rhines v. Weber*, 544 U.S. 269 (2005).

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court.   Moreover, even if a petitioner had good cause for that failure, the district court would abuse it discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. . . On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."

*Id.*, 544 U.S. at 277 and 278.

30.   On October 12, 2012, the undersigned filed an Order Requiring Petitioner to Advise the Court if He Wants to Proceed with the Unexhausted Claims. [Doc. 15.]

31.   Montano timely responded by filing his Petitioner's Response to Court's Order Pertaining to Unexhausted Claims. [Doc. 16.] He asserts in his Response that he did raise his claims in Ground Four in state court and cites to his Writ of Habeas to the state district court [Doc. 12-1 at p. 3 of 4, line 9] and his Writ of Habeas to the New Mexico Supreme Court [Doc. 12-2 at p. 3, point 2.]   Montano then requests that "this Court [] view Ground Four as an exhausted claim and take into account that supporting testimonial evidence exists." [ Doc. 16 at p. 3.]

32.   Because Montano asserts that he did raise the facts alleged in Ground Four [ Doc. 16 ] in state court and again asks the Court to view Ground Four as an exhausted claim, the Court will recommend that Montano's claims in Ground Four be consider exhausted.

33.   Alternatively, the Court notes that the facts alleged by Montano in Ground Four do not appear meritorious standing on their own.  *See Rhines v. Weber*, 544 U.S. at 277 and 278.

11

Therefore, to the extent that there is any possibility that the claims in Ground Four could still be considered unexhausted, the Court will recommend that Montano's ineffective assistance of counsel claim in Ground Four be considered as a part of his ineffective assistance claims in Ground One, and that it was asserted at this late date, as originally stated by the Petitioner, to satisfy the prejudice prong for ineffective assistance of counsel claims pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984). [Doc. 14 at p. 3.]

### Deference to State Court Adjudications

34.   Montano's petition is analyzed under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.  The appropriate standard of review depends on "whether a claim was decided on the merits in state court." *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003); *Allen v. Mullin,* 368 F.3d 1220, 1234 (10th Cir. 2004)(*citing Bell v. Cone*, 535 U.S. 685, 694 (2002), *cert. denied,* 543 U.S. 1156 (2005)).   If the claim was adjudicated on the merits by the state court, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

35.   With regard to whether a state court adjudicated a petitioner's claims "on the merits," the United States Supreme Court recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter,* 131 S.Ct. 770, 785, 2011 WL 148587, *10 (Jan. 19, 2011)  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

of any indication or state-law procedural principles to the contrary." *Id.* at 784-785.  Where a

state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still

must be met by showing there was no reasonable basis for the state court to deny relief.  *Id.*

"The presumption may be overcome when there is reason to think some other explanation for the

state court's decision is more likely." *Id.* at 785 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803

(1991)).   The undersigned Magistrate Judge finds that Montano's claims were adjudicated on

the merits, except Ground Four which is discussed above in Paragraphs 25-30.

### Legal Framework for Ineffective Assistance of Counsel Claims

36.   The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S.

668, 687 (1984) governs the inquiry of whether an attorney's performance was ineffective.  In

order to establish a claim of ineffective assistance of counsel, Montano must show both that (1)

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment," and (2) that he was so prejudiced because of counsel's

errors that the outcome of the state court's proceedings was rendered unreliable.  *Id.*  In applying

the test of whether an attorney's performance was deficient and fell below an objective standard

of reasonableness, the Tenth Circuit advises that "we give considerable deference to an

attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable profession

judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir.)(internal citation omitted), *cert.*

*denied*, 537 U.S. 1093 (2002).  In order to be found constitutionally ineffective, trial counsel's

performance must have been completely unreasonable, not merely wrong, so that it bears no

relationship to a possible defense strategy.  *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.),

*cert. denied,* 522 U.S. 844 (1997).  Moreover, "[t]o establish *Strickland* prejudice. . . [i]n the

13

context of pleas [Petitioner] must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S.Ct. 1376, 1387 (2012).

37.   The question under *Strickland* is not whether counsel could have done more or even better, but whether counsel's actions or decisions were "[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgment."  *Strickland*, 466 U.S. at 691.  In other words, even if Montano had not received "perfect" or the "best possible" legal representation at every step of the proceeding, he is not entitled to "perfect" or the "best possible" representation.  *Washington v. Watkins*, 655 F.2d 1346, 1357 (5th Cir. 1981), *cert. denied,* 456 U.S. 949 (1982)(not "entitled to perfect or error free representation"); *United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980)(not entitled to representation that results in an acquittal or "best possible" representation); *see also Martinez v. U.S.*, 2008 WL 2329171, *5 (D. Utah June 3, 2008)(unpublished opinion).  The Court does not indulge in the "distorting effects of hindsight." *Strickland,* 466 U.S. at 689.

**Montano's ineffective assistance of counsel claims in Ground One and Ground Four.**

38.   Montano's ineffective assistance of counsel claims in Ground One are based on his assertion that his lawyer misrepresented the consequences of his Plea Agreement, failed to object to a sentence that he alleges did not conform to the Plea Agreement,  and failed to timely file a motion after the conviction.  [Doc. 1 at p.5 of 17 and p. 10 of 17.] Montano's ineffective assistance of counsel claim in Ground Four was asserted as an additional reason as to why Montano was prejudiced by his counsel's advice in connection with the Plea Agreement. [Doc. 14 at pp. 3-4.]  This Court will recommend that Montano has not demonstrated that his counsel's actions or decisions were "objectively unreasonable in all the circumstances," *Strickland*, 466 U.S. at p. 691, or "that the outcome of the plea process would have been different with

14

competent advice." *Lafler v. Cooper*, 132 S.Ct. 1396, 1387 (2012).   The Court lists each claim

below and provides further analysis as required.

39.   Montano first asserts that his lawyer misrepresented the consequences of his Plea

Agreement.   Judge Hartley twice looked at this issue on the merits [Doc. 12-1 at Ex. E and Ex. I]

and found that there is no difference between the Plea Agreement and the Judgment and

Sentence. [*Id.*]   The New Mexico Supreme Court upheld his opinion. [Doc. 12-3 at Ex. L.] The

Plea Agreement [Doc. 12-1 at Ex. B] gives the judge a range of sentences from fifteen years to

twenty years.   Montano's allegation that he should have been sentenced to 15 years incarceration

is insufficient to demonstrate prejudice.   Montano was sentenced to twenty years, the maximum

incarceration allowed by the Plea Agreement, and a range to which he had acknowledged by

initialing, approving, and signing the Plea Agreement. [*Id.*]   Montano's counsel's professional

judgement recommending that Montano accept the Plea Agreement appears to this Court to be

completely reasonable given the fact he was facing a life sentence plus 13 and 1/2 years

imprisonment.   Therefore, the Court will recommend that this claim of ineffective assistance of

counsel in Ground One be dismissed with prejudice.

40.   Montano also argues that his counsel was ineffective because he failed to object to

his sentence, apparently at the time it was imposed.   However, Montano's counsel did file a

Motion to Amend Judgment and Sentence [Doc. 12-1 at Ex. E] which was denied on the merits.

Therefore Montano has failed to demonstrate prejudice and the Court will recommend that his

claim of ineffective assistance of counsel in Ground One be dismissed with prejudice.

41.   Montano also argues that his counsel was ineffective because he failed to timely file

a motion after the conviction.   Although it is not entirely clear, the Court assumes that Montano

is referring to the fact that his counsel did not timely file a motion for modification of his

sentence. [*See* Doc. 12-1 at Ex. E, p. 2; Doc. 12-1, Ex. I at p. 1.]   Although Montano's counsel

did file the Motion to Amend Judgment and Sentence outside the 90 days time limit set by state

statute [Doc. 12-1 at Ex. E], Montano has not demonstrated prejudice by counsel's failure timely

file; Judge Hartley addressed and decided the Motion to Amend Judgement and Sentence on the

merits  "notwithstanding" the late filing. [*Id.* ]  Therefore Montano has failed to demonstrate

prejudice and the Court will recommend that this claim of ineffective assistance of counsel in

Ground One be dismissed with prejudice.

42.   In Ground Four, Montano asserts that he paid his attorney to take his case to trial,

but that his counsel's failure to engage in any sort of pretrial practice left Montano with no

choice but to enter a guilty plea. [Doc. 1 at p. 10 of 17].  Montano's bare assertion that his

counsel failed to engage in any pretrial practice does not meet the standard that Montano's

counsel's actions in securing a plea agreement were completely unreasonable nor does it

demonstrate that Montano was prejudiced as a result of the plea agreement.  Therefore, the Court

will recommend that this claim of ineffective assistance of counsel in Ground Four be dismissed

with prejudice.

### Montano's Federal Habeas Claims in Ground 2 and Ground 3.

43.   In his Grounds Two and Three,  Montano claims prosecutorial misconduct and

abuse of discretion which he states were "formerly raised in Violation of Due Process and

Breach of Plea Agreement/Contract." [Doc. 1 at pp.6 of 17 and 8 of 17.]

44.  In Ground Two he argues that the state had agreed to a 20 year cap on his sentence

yet proceeded to tell the court that a 20 year prison term with 4 years probation was an option.

Montano argues that his sentence exceeds the cap in the Plea Agreement.  Montano states that he

is "unaware if the State misrepresented the consequences of the plea to counsel, wasn't

thoroughly explained by counsel, or both counsel and State were in collusion." [Doc. 1 at p.6 of 17.]

45.   In Ground Three,  Montano claims that the state court abused its discretion with the sentence it imposed which he claims was contrary to the plea agreement.  Montano argues that he understood that the length of his probation could not exceed the length of the maximum imprisonment which was 20 years, including 5 years of which was to be served on probation resulting in only fifteen years imprisonment. [Doc. 1 at p. 8 of 17.]

46.   Montano's claims in Ground Two and Ground Three are nothing more than allegation that the state and the sentencing court breached the terms of the Plea and Disposition Agreement, [Doc. 12-1 at Ex. B] as Montano says he understood them. [Doc. 1 at pp.6 and 8 of 17.]

47.   These claims are simply "matters relating to sentencing [and] service of sentence and do not raise federal constitutional questions."  *Harris v. Dep't of Corrections*, 426 F.Supp. 350, 352 (W.D. Okla. 1977); *see also Ballard v. Franklin*, 463 Fed. Appx. 732, 734-735 (10th Cir. Nov. 23, 2011)(unpublished opinion).

48.   In addition,  a habeas petitioner cannot transform a state law issue into a federal issue merely by asserting a violation of his right to due process, as Montano did in his state habeas proceeding.  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  Although a pro se litigant's pleadings should be construed liberally, courts should not "assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   "It is not for this court to make [Montano's] arguments for him.  *Denney v. Roberts*, 196 Fed.Appx. 713, 2006 WL 2774946 (10th Cir. 2006)(unpublished).

49.   Finally, the Tenth Circuit affords "wide discretion to the state trial court's sentencing

decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Schulze v. Addison* , 2012 WL 3570771, 2 (10th Cir. 2012)(slip opinion), *quoting Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000).   There is no such showing here.   The state sentencing judge held, and the New Mexico Supreme Court agreed, that "[t]he Judgement and the Sentence comes to the same conclusion as the Plea Agreement and does not modify the period of incarceration." [Doc. 12-1 at Ex. E and Ex. L.]

50.  The undersigned Magistrate Judge concludes that Montano's claims in Ground Two and Ground Three raise issues of state law and federal habeas is not available and therefore will recommend that Ground Two and Three be dismissed with prejudice.

### Recommended Disposition on Montano's Petition for Writ of Habeas Corpus

51.  The Court recommends that Montano's § 2254 petition be denied and that this matter be dismissed in its entirety with prejudice.

**ALAN C. TORGERSON**
**United States Magistrate Judge**